UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BRUCE ALLEN HINCKLEY,

        Plaintiff,

v.

HEIDI WASHINGTON, et al.,

        Defendants.
_____/

Case No. 1:23-cv-64

Hon. Hala Y. Jarbou

**OPINION**

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA). Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.    Factual allegations**

    Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The

events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi Washington and DRF Social Workers Unknown Lynn and Unknown Howland. (Compl., ECF No. 1, PageID.2.) Plaintiff sues all Defendants in their individual and official capacities. (*Id.*)

In Plaintiff's complaint, he alleges that he participated in the MDOC's Medication for Addiction Treatment (MAT) program, which is a voluntary program for prisoners "who have alcohol or opioid use disorders (addictions)." (*Id.*, PageID.3, 7; *see* ECF No. 5-1, PageID.86.)[1] Plaintiff states that "[t]his program would . . . allow the prison and medical staff to administer two 8 mg strips daily." (Compl., ECF No. 1, PageID.3.) On January 10, 2022, a memorandum was issued, indicating that "Suboxone would be changed to Sublocade injections." (*Id.*, PageID.7.) A memorandum dated February 25, 2022, provided the following explanation regarding the medications: "Sublocade is [an] extended-release buprenorphine injection that is used to treat individuals with an opioid use disorder. Buprenorphine is the same active component (opioid partial agonist) in the Suboxone films that you have previously taken." (ECF No. 1-3, PageID.21.) "Prior to the injections, the doctor and MAT nurse Defendant Lynn spoke to all MAT prisoners in a group setting and avoided individual consultation." (Compl., ECF No. 1, PageID.7.)

On January 18, 2022, "Plaintiff sent a healthcare request to Health Service Defendant Lynn with concerns of th[e] side effects and the dangers of this [new] medication to people with head injuries, which Plaintiff has." (*Id.*, PageID.8.) Plaintiff "was refused individual treatment to ensure this medication was right for him." (*Id.*) That same day, Plaintiff submitted "a regular kite to Defendant Lynn" detailing "his concerns about a medication which 2/3rds of patients with adverse

---

[1] In this opinion, the Court corrects the spelling, punctuation, and capitalization in quotations from Plaintiff's filings.

2

reactions in people [sic] with injuries he has endured, i.e., head injuries, urination deficiencies, and other medications which can cause other health risks and even death." (*Id.*, PageID.9.)

The next day, January 19, 2022, Plaintiff sent another kite to Defendant Lynn "begging to be called out [for] an individual consultation before the Sublocade shots were administered." (*Id.*, PageID.8.) In this kite, Plaintiff "specifically informed Defendant Lynn [that] he had concerns and questions about the medication he was being forced to take." (*Id.*) That same day, Plaintiff also sent a kite to Defendant Howland "informing her that he had concerns and questions about Sublocade since she had initially promised Plaintiff Suboxone would not be removed from him." (*Id.*) In the kite, Plaintiff also "informed Defendant Howland [that] at no time did he receive any medical evaluation or physical which required blood work to ensure Plaintiff the medications would be safe for him as an individual." (*Id.*) Plaintiff states that "at no time did Defendants Lynn or Howland address Plaintiff's kites, refused to answer his concerns, and did not conduct any individual blood work or physical to ensure this medication substitute was safe for the Plaintiff." (*Id.*, PageID.9.)

"On January 23, 2022, Plaintiff submitted a grievance about being refused his right to know the risks of Sublocade . . . and if it was safe specifically to him because of his head injuries." (*Id.*) Plaintiff states that "it was not until after Plaintiff's grievance did any memo [i.e., the February 25, 2022, memorandum] go out to prisoners in [the] MAT program and other prisoners informing prisoners about Sublocade." (*Id.*) Plaintiff appealed his grievance to steps II and III. (*Id.*, PageID.9, 10.) In the level II response, Plaintiff was advised that "offenders do have the right to refuse Sublocade injection. Offenders who refuse will . . . be instructed to contact Health Care if they experience any withdrawal symptoms so that treatment may be provided for same." (ECF No. 1-9, PageID.37.)

3

On March 8, 2022, Plaintiff submitted a kite to health services "due to a major change in medication which decreased the dosage in which was diagnosed by the manufacturer because Plaintiff was hav[ing] heavy withdrawals." (Compl., ECF No. 1, PageID.10.) Plaintiff was seen in the clinic, and an unnamed doctor prescribed medications for the withdrawal symptoms. (ECF No. 1-10, PageID.39–40.) On March 11, 2022, Plaintiff submitted another kite noting that his withdrawal symptoms had increased. (Compl., ECF No. 1, PageID.10.)

On April 27, 2022, Plaintiff received the response to his step III grievance. (*Id.*) The response "rubber stamp[ed] and affirm[ed] the [prior] grievance findings." (*Id.*) "At no point w[as] any resolution administered which would have been to simply evaluate the Plaintiff and remedy the complaints raised." (*Id.*) Plaintiff claims that an unnamed "medical nurse/doctor denied to individually treat Plaintiff and refused to evaluate him and his file, further demanding to either take what they prescribe or don't receive any form of treatment period." (*Id.*, PageID.11.)

Based on the foregoing allegations, Plaintiff avers that Defendants Lynn, Howland, and Washington violated his rights under the Fifth, Eighth, and Fourteenth Amendments, the ADA, and the RA, as well as under state law. (*Id.*, PageID.5, 11–12.) Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief. (*Id.*, PageID.4, 12–13.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

4

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

  **A.** **Section 1983 Claims**

  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    **1.** **Supervisory Liability**

  As an initial matter, to the extent that Plaintiff seeks to hold Defendant Washington, as Director of the MDOC, liable for the actions of her subordinates, government officials, such as Defendant Washington, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th

5

Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Accordingly, to the extent that Plaintiff seeks to hold Defendant Washington liable on the basis of her supervisory position, such claims will be dismissed.

### 2.   Fifth and Fourteenth Amendment Claims

Plaintiff alleges that Defendants Lynn and Howland violated his due process rights under the Fifth and Fourteenth Amendments because they failed "to inform Plaintiff of known side effects to Sublocade when [they] failed to conduct an individual physical exam and consultation prior to removing him from Suboxone treatment to a new medication." (Compl., ECF No. 1, PageID.12.) Further, Plaintiff alleges that Defendant Washington violated his Fifth and Fourteenth Amendment rights by "failing to put into place policies and procedures requiring that medical changes for [the] MAT program be [based] on a prisoner's individual medical record and not that of prisoners as a whole." (*Id.*)

As an initial matter, the Fifth Amendment applies only to claims against federal employees. In this action, Plaintiff sues employees of the MDOC. Plaintiff, therefore, cannot maintain his Fifth Amendment claims, and those claims will be dismissed. *See, e.g.*, *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause

6

restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government").

As to Plaintiff's Fourteenth Amendment due process claims, "[t]he Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

In this action, although Plaintiff claims that he was "forced" to switch medications despite his concerns about the side effects of the new medication, Plaintiff does not allege—and indeed

7

he cannot allege—that this was situation where he was receiving involuntary medical treatment. Instead, Plaintiff voluntarily participated in the MAT program, and he could have refused the new medication. (*See* Compl., ECF No. 1, PageID.7; ECF No. 1-2, PageID.19; ECF No. 5-1, PageID.86.). The "[f]ailure to receive one's preferred pain [or other] medication or treatment program is 'neither related to freedom of restraint nor an 'atypical and significant hardship.''" *Niemic v. Maloney*, 448 F. Supp. 2d 270, 280 (D. Mass. 2006) (quoting *Sandin*, 515 U.S. at 484).

Moreover, although Plaintiff apparently believes that he and other prisoners in the MAT program were initially not provided with enough information about the new medication, Plaintiff's allegations show that MAT participants, including Plaintiff, received information about the medication in a February 25, 2022, memorandum. (*See* Compl., ECF No. 1, PageID.9 (stating that "it was not until after Plaintiff's grievance did any memo go out to prisoners in MAT program and other prisoners informing prisoners about Sublocade"); ECF No. 1-3, PageID.21–22.) Additionally, "[p]rior to the injections, the doctor and MAT nurse Defendant Lynn spoke to all MAT prisoners in a group setting." (Compl., ECF No. 1, PageID.7.) Plaintiff does not allege that he was unable to ask questions in this group meeting or that the information provided in the group meeting was inadequate; he simply wished to also have an "individual consultation" about the medication.

Under the circumstances alleged by Plaintiff, in which MAT participants were provided with information regarding the new medication in a written memorandum and had the opportunity to meet with an unnamed doctor and Defendant Lynn in a group setting to discuss the medication, Plaintiff has failed to allege facts to show that he was unable to make an informed decision regarding his receipt of the new medication. *Cf. Knight v. Grossman*, 942 F.3d 336, 342 (7th Cir. 2019) (concluding that "prisoners have a Fourteenth Amendment right to informed consent" with

8

respect to medical treatment). Similarly, in the specific situation alleged by Plaintiff, failing to implement the policy advocated by Plaintiff—i.e., "requiring that medical changes for MAT program be on a prisoner's individual medical record and not that of prisoners as a whole"—did not violate Plaintiff's due process rights. (Compl., ECF No. 1, PageID.12); *see Grinter*, 532 F.3d at 576 (discussing that § 1983 liability for supervisory defendants cannot be premised on a mere failure to act).

Additionally, to the extent that Plaintiff intended to raise a substantive due process claim, he fails to state such a claim. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an

amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Eighth Amendment applies to protect Plaintiff's right to receive adequate medical treatment. *See infra* Part II.A.3. Furthermore, nothing in the complaint suggests that Defendants engaged in the sort of egregious conduct that would support a substantive due process claim. Consequently, any intended substantive due process claim will be dismissed.

For all of the reasons set forth above, Plaintiff's Fifth and Fourteenth Amendment due process claims will be dismissed.[2]

### 3. Eighth Amendment Claims

Plaintiff next alleges that Defendants Lynn and Howland violated his Eighth Amendment rights by failing "to conduct a physical individually [and] evaluate Plaintiff's medical file." (Compl., ECF No. 1, PageID.11.) Plaintiff states that he "was placed in serious withdrawals that physical[ly] took a toll and only increased his symptoms as an addict." (*Id.*) Plaintiff also alleges

---

[2] In his complaint, Plaintiff states that he filed grievances setting forth his concerns about the new medication. (*See, e.g.*, Compl., ECF No. 1, PageID.9–10.) To the extent that Plaintiff intended to raise a Fourteenth Amendment due process claim regarding any aspect of the grievance process, courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Moreover, Plaintiff does not allege that any of the named Defendants were involved in the grievance process, and a claim is subject to dismissal where a plaintiff has failed to allege facts to show how the named defendants were involved in the violation of his rights. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). For these reasons, any intended due process claim regarding the grievance process will be dismissed.

that Defendant Washington violated his Eighth Amendment rights by failing "to put into place a policy" to "properly review the side effects to any treatment to prisoners' health." (*Id.*)

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can

11

be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate

medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

As an initial matter, it is not clear that Plaintiff has alleged sufficient facts to satisfy the objective component of the relevant two-prong test. Plaintiff references concerns about the side effects of the new medication—Sublocade—for people, such as himself, who have "head injuries" and "urination deficiencies," and he indicates that he has "extreme migraines due to head injuries" (Compl., ECF No. 1, PageID.9, 10); however, Plaintiff fails to provide any further explanation about these medical issues. Plaintiff also references "serious withdrawals," but he does not explain the specific nature of his withdrawal symptoms. (*See, e.g.*, *id.*, PageID.11.) Further, without providing any additional explanation, Plaintiff states that he participated in the MAT program because it "could help with [his] opioid addiction and could also help with pain." (*Id.*, PageID.3.) Regardless, for the purposes of this opinion, the Court assumes, without deciding, that Plaintiff has satisfied the objective component of the relevant two-prong test.

With respect to the subjective component, Plaintiff alleges that on February 25, 2022, a memorandum was sent to MAT participants "informing [them] what Sublocade actually was." (*Id.*, PageID.8.; *see* ECF No. 1-3, PageID.21 (stating that "Sublocade is [an] extended-release buprenorphine injection that is used to treat individuals with an opioid use disorder," and "Buprenorphine is the same active component (opioid partial agonist) in the Suboxone films that

13

[MAT participants had] previously taken").) Additionally, before implementing the new medication for MAT participants, "the doctor [(not a party)] and MAT nurse Defendant Lynn spoke to all MAT prisoners in a group setting" about the medication. (Compl., ECF No. 1, PageID.7.) Plaintiff does not allege that the information provided in the group meeting was inadequate or that he was unable to ask questions in this group meeting.

Plaintiff faults Defendants Lynn and Howland for not providing him with an "individual consultation before the Sublocade shots were administered," despite Plaintiff's requests to receive such a consultation. (*Id.*, PageID.8) Plaintiff also faults Defendant Washington for failing "to put into place a policy" to "properly review the side effects to any treatment to prisoners' health" and "for failing to put into place policies and procedures requiring that medical changes for [the] MAT program be on a prisoners' individual medical record and not that of prisoners as a whole." (*Id.*, PageID.11, 12.) Although prisoners are entitled to receive adequate medical care, they are not entitled to "unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (discussing that "society does not expect that prisoners will have unqualified access to health care" (citation omitted)). Here, it is clear that Plaintiff wished to receive an "individual consultation" regarding the new medication; however, he has failed to allege sufficient facts to show that such a consultation was required to prevent a substantial risk of serious harm to Plaintiff.

Plaintiff wished to receive an individual consultation because he was concerned about potential side effects of the medication due to certain medical issues that he had; Plaintiff does not allege that he suffered any actual side effects as a result of these conditions. Plaintiff alleges that he had withdrawal symptoms at one point, however, he alleges that this occurred because the dosage was decreased. (*See* Compl., ECF No. 1, PageID.10.) Regardless, even if Plaintiff had in fact experienced side effects from the medication, "the prescribing of drugs by a physician[, or

14

other medical provider,] which causes side effects does not constitute deliberate indifference." *Mason v. Eddy*, No. 1:18-cv-2968, 2019 WL 3766804, at *11 (N.D. Ohio Aug. 9, 2019) (citations omitted); *see, e.g.*, *Walker v. Abdellatif*, No. 1:07-cv-1267, 2009 WL 579394, at *7 (W.D. Mich. Mar. 5, 2009) (discussing that "medication adjustments involve the doctor's medical judgment regarding plaintiff's treatment," and a plaintiff's "disagreement with the health care providers regarding his diagnosis and treatment does not rise to the level of a federal constitutional violation" (citations omitted)); *Christensen v. United States*, No. 5:11-321-KKC, 2013 WL 4521040, at *4 (E.D. Ky. Aug. 26, 2013) (discussing that the doctor's "decision to continue [the inmate's] prescription for [the medication that caused side effects] was evidently based upon her medical judgment that its benefits to his long-term cardiac health outweighed its detrimental side effects"). If prescribing a prisoner a medication that actually causes the prisoner to experience side effects does not constitute deliberate indifference, it follows that providing information about a medication in a group setting and in a written memorandum—but not providing an "individual consultation" to discuss potential side effects—does not constitute deliberate indifference. For the same reasons, in the specific situation alleged by Plaintiff, failing to implement the policy advocated by Plaintiff—i.e., requiring such individual consultations, in addition to providing the information in a group setting and in a written format—also does not constitute deliberate indifference. *See Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899.

Moreover, it is clear from Plaintiff's complaint that he wished to continue to receive Suboxone, which had previously been provided to MAT program participants, rather than the new Sublocade injections (*see, e.g.*, Compl., ECF No. 1, PageID.7–8); however, "a desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." *Mitchell*, 553 F. App'x at 605 (citations omitted). Furthermore, "a patient's disagreement with his physicians

15

over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted).

Finally, without providing much explanation, Plaintiff indicates that on March 8, 2022, he experienced withdrawals "due to a major change in medication which decreased the dosage in which was diagnosed by the manufacturer." (Compl., ECF No. 1, PageID.10.) In response to Plaintiff's complaint, a doctor (not a party) prescribed medications for the withdrawal symptoms. (ECF No. 1-10, PageID.39–40.) On March 11, 2022, Plaintiff submitted another kite indicating that his withdrawal symptoms had increased. (Compl., ECF No. 1, PageID.10.)

The Court notes that it appears that Plaintiff did in fact receive the new Sublocade injections at some point (*see, e.g.*, ECF No. 1-8, PageID.33–37, 53–57), so Plaintiff's withdrawal symptoms may have been due to the change in medication, rather than a refusal to take any medication; however, from the facts alleged in the complaint it is unclear. Regardless, Plaintiff fails to allege any facts showing that Defendants were aware of any subsequent withdrawal symptoms that Plaintiff experienced. (*See generally* Compl., ECF No. 1.) Under these circumstances, there are no facts in the complaint from which to reasonably infer that Defendants had any awareness of a substantial risk of serious harm to Plaintiff. *See Farmer*, 511 U.S. at 835.

Accordingly, for all of the reasons set forth above, Plaintiff's Eighth Amendment claims against Defendants will be dismissed.

### B. ADA and RA Claims

Without providing any further explanation, Plaintiff claims that Defendants violated his rights under Title II of the ADA, 42 U.S.C. §§ 12101–12213, and the RA of 1973, 29 U.S.C. § 794(a). (Compl., ECF No. 1, PageID.5.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2). Similarly, § 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates, *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998), and the RA has also been found to apply to state prisons and inmates. *See, e.g.*, *Wright v. N.Y. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (discussing that "[b]oth the ADA and the RA undoubtedly apply to state prisons and their prisoners" (citation omitted). The proper defendant for Title II ADA claims and RA claims is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted). Plaintiff sues Defendants Lynn, Howland, and Washington in their official and individual capacities. Because Plaintiff may not pursue ADA and RA claims against Defendants in their individual capacities, any intended ADA and RA claims against Defendants in their individual capacities will be dismissed.

As to Plaintiff's official capacity ADA and RA claims, the State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA or the RA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1044–47. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v.*

17

*Georgia*, 546 U.S. 151, 159 (2006). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims. Likewise, the Court assumes, without deciding, that Defendants are not immune from liability in their official capacities under the RA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1047 (citing cases).

Turning to the merits of Plaintiff's ADA and RA claims, as an initial matter, Plaintiff has failed to allege sufficient facts to show that he has a disability pursuant to the ADA or the RA. *See* 42 U.S.C. § 12102(2); *see also* 29 U.S.C. § 794(a). Moreover, even assuming Plaintiff had alleged sufficient facts to show that he has a disability pursuant to the ADA and the RA, Plaintiff's allegations do not show that he was excluded from a service or program, denied accommodation, or discriminated against due to his disability.

As the United States Court of Appeals for the Second Circuit has explained, "[w]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'" *United States v. Univ. Hosp.* 729 F.2d 144, 157 (2d Cir. 1984). Indeed, that distinction explains why the ADA and the RA are not appropriate federal causes of action to challenge the sufficiency of medical treatment. *See, e.g.*, *Baldridge-El v. Gundy*, No. 99-2387, 2000 WL 1721014, at *2 (6th Cir. Nov. 8, 2000) ("[N]either the RA nor the ADA provide a cause of action for medical malpractice."); *Centaurs v. Haslam*, No. 14-5348, 2014 WL 12972238, at *1 (6th Cir. Oct. 2, 2014) ("Although [Plaintiff] may have a viable civil rights claim under 42 U.S.C. § 1983 for inadequate medical care, he has failed to state a prima facie case under the parameters of the ADA."); *Powell v. Columbus Medical Enterprises, LLC*, No. 21-3351, 2021 WL 8053886, at *2 (6th Cir. Dec. 13, 2021) ("This dissatisfaction

necessarily sounds in medical malpractice, which, 'by itself, does not state a claim under the ADA.'").[2]

In summary, Plaintiff's conclusory allegations of an ADA violation and an RA violation without specific supporting factual allegations fail to state a claim. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff's ADA and RA claims will be dismissed.

### C. State Law Claims

Plaintiff suggests that Defendants violated his rights under state law. (*See, e.g.*, Compl., ECF No. 1, PageID.11 (stating that Defendant Washington "breached her duty").)

Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law fails to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however,

---

[2] S*ee also Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) ("Iseley . . . claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions."); *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) ("The ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'"); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) ("[A] lawsuit under the Rehab Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions."); *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("[I]t is well settled that the ADA [and the RA do] not provide a private right of action for substandard medical treatment." (internal quotation marks omitted)); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) ("The Rehabilitation Act, like the ADA, was never intended to apply to decisions involving . . . medical treatment.").

remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Therefore, Plaintiff's state law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: April 28, 2023   /s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE